UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BREATHE DC,<br><br>    *Plaintiff*,<br><br>v.<br><br>SWEDISH MATCH NORTH AMERICA LLC et al.,<br><br>    *Defendants*. | Civil Action No. 24-3208 (TJK) |

## MEMORANDUM OPINION

Swedish Match North America LLC and Philip Morris International Inc. market and sell nicotine pouches in the District of Columbia under the brand name ZYN. Breathe DC, a nonprofit corporation seeking to combat the harm caused by such products, sued them in the Superior Court of the District of Columbia for false and deceptive advertising under the District of Columbia Consumers Protection Procedures Act, or CPPA, in a representative action on behalf of the public. Swedish Match then removed the case to this Court, asserting subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1332. Breathe DC now moves to remand, arguing that (1) the Court lacks jurisdiction under § 1332 because the jurisdictional amount-in-controversy requirement has not been satisfied; (2) the Court lacks jurisdiction under § 1331 because its claims fall outside the federal-enclave jurisdiction doctrine; and (3) in any event, it lacks Article III standing to bring this suit in federal court, rather than the statutory standing it relied on to file in Superior Court. The Court agrees that, for all these reasons, it lacks subject-matter jurisdiction. So it will grant Breathe DC's motion to remand, deny its motion for fees and costs, and remand the case.

**I.   Background**

Breathe DC is a nonprofit corporation dedicated to combatting the negative impact of

tobacco and nicotine products in the District of Columbia. ECF No. 1-1 ¶ 17. It provides counseling and education services to help District residents stop using such products. *Id.* ¶ 18. It also "advocates for stronger laws and policies to counteract" what it believes are "deceptive and predatory practices by tobacco and nicotine companies," like "misleading marketing." *Id.* ¶ 19.

In September 2024, Breathe DC sued Swedish Match North America LLC ("Swedish Match") and Philip Morris International Inc. in the Superior Court of the District of Columbia under the CPPA, D.C. Code § 28-3901 *et seq.* Breathe DC alleges that Defendants sell nicotine pouches under the brand name ZYN. ECF No. 1-1 ¶¶ 20–24. According to Breathe DC, these pouches offer an alternative to traditional nicotine products like cigarettes. *Id.* ¶¶ 4–5. And the popularity of these pouches, it alleges, is "exploding"—between 2022 and 2023, ZYN sales increased by 65.7%. *Id.* ¶ 10.

Breathe DC alleges that this "skyrocketing" use stems in part from Defendants' misleading advertising. ECF No. 1-1 ¶ 11. For example, Defendants allegedly advertise ZYN as "tobacco-free," even though its nicotine is "tobacco-derived." *Id.* And because consumers purportedly "associate health concerns with tobacco," this "designation" makes consumers less hesitant to buy ZYN pouches, which they (perhaps mistakenly) believe to be "safer" than traditional tobacco products. *Id.* Further, Breathe DC alleges that Defendants market ZYN to "young people" and rely on peer pressure to keep their sales high, *id.* ¶¶ 3, 13, and advertise and sell ZYN in ten flavors "to tempt young buyers," *id.* ¶¶ 92–93, 110. Breathe DC alleges that these practices are deceptive because they "imply[]" that Defendants can lawfully sell ZYN to those under age 21 or as a flavored product in the District of Columbia, when in fact they cannot. *Id.* ¶¶ 105, 111.

Swedish Match removed the case here pursuant to 28 U.S.C. § 1441, claiming that this Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1332. *See* ECF No. 1 ¶¶ 10–

25; ECF No. 24 at 9. Breathe DC now moves to remand the case to Superior Court because the Court purportedly lacks such subject-matter jurisdiction under those statutes and, in any event, because Breathe DC lacks Article III standing. ECF No. 15-1. Swedish Match also moves for fees and costs associated with its motion. ECF No. 16.

## II.    Legal Standards

"A civil action filed in state court may only be removed to a United States district court if the case could originally have been brought in federal court." *Nat'l Consumers League v. Flowers Bakeries, LLC*, 36 F. Supp. 3d 26, 30 (D.D.C. 2014) (citing 28 U.S.C. § 1441(a)). Because removal implicates "significant federalism concerns," a court must "strictly construe[] the scope of its removal jurisdiction." *Downey v. Ambassador Dev., LLC*, 568 F. Supp. 2d 28, 30 (D.D.C. 2008) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107–09 (1941)). "When it appears that a district court lacks subject matter jurisdiction over a case that has been removed from a state court, the district court must remand the case." *Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192, 196 (D.C. Cir. 2002) (citing 28 U.S.C. § 1447(c)–(d)). "The party seeking removal of an action bears the burden of proving that jurisdiction exists in federal court." *Animal Legal Def. Fund v. Hormel Foods Corp.*, 249 F. Supp. 3d 53, 56 (D.D.C. 2017) (quoting *Downey*, 568 F. Supp. 2d at 30).

## III.    Analysis

The Court will remand this case. Swedish Match has not shown that this Court has subject-matter jurisdiction, because it has not shown that the statutory requirements for either diversity jurisdiction or federal question jurisdiction are satisfied. And even if it had, it has also not shown that Breathe DC has the Article III standing required to bring this case in federal court.

### A.    Diversity Jurisdiction

District courts have subject-matter jurisdiction over an action if complete diversity exists

among the parties and the amount in controversy is greater than $75,000.  28 U.S.C. § 1332(a).  Breathe DC is a citizen of the District of Columbia, ECF No. 1 ¶ 11, and Defendants are citizens of Connecticut, Delaware, and Virginia, ECF No. 24-1 ¶¶ 4–5; ECF No. 12 at 12.  Thus, the parties agree that complete diversity exists.  But Breathe DC contends that the amount in controversy is not satisfied.  ECF No. 15-1 at 9–18.  In response, Swedish Match argues that it is, based on the total cost of compliance with the requested injunction—the cost of correcting their allegedly false advertising—as well as the attorneys' fees sought by that Breathe DC.  ECF No. 24 at 13–30.

      The problem for Swedish Match is that the total cost of their compliance is not a proper measure of the amount in controversy because it would violate the non-aggregation rule.  Under that rule, "the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." *Animal Legal Def. Fund*, 249 F. Supp. 3d at 59–60 (quoting *Snyder v. Harris*, 394 U.S. 332, 335 (1969)).  And in CPPA suits brought under D.C. Code § 28-3905(k)(1), like this one, courts in this District have consistently applied the non-aggregation rule to hold that, if a purported amount in controversy is calculated by reference to a defendant's cost of compliance with an injunction, the total cost of compliance must be divided by the number of the injunction's beneficiaries.  *See, e.g.*, *id.* at 60 (Kollar-Kotelly, J.); *Breathe DC v. JUUL Labs, Inc.*, No. 20-cv-619, 2023 WL 4531767, at *4–5 (D.D.C. July 13, 2023) (Boasberg, C.J.); *Toxin Free USA v. J.M. Smucker Co.*, 507 F. Supp. 3d 40, 45–46 (D.D.C. 2020) (Friedrich, J.); *Inst. for Truth in Mktg. v. Total Health Network Corp.*, 321 F. Supp. 3d 76, 91 (D.D.C. 2018) (Jackson, J.); *Breathe DC v. Santa Fe Nat. Tobacco Co.*, 232 F. Supp. 3d 163, 171 (D.D.C. 2017) (Huvelle, J.); *Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 105–07 (D.D.C. 2008) (Bates, J.).  This is so even when a single nonprofit sues on behalf of a large group of beneficiaries that "need not be added as parties to the lawsuit." *Santa Fe Nat. Tobacco Co.*, 232 F. Supp. 3d at 171; *Clean*

4

*Label Project Found. v. Now Health Grp., Inc.*, No. 21-cv-11, 2021 WL 2809106, at *1, *4 (D.D.C. July 6, 2021) (applying the non-aggregation principle to a CPPA case in which a single plaintiff brought a "representative action" "on behalf of itself and the general public"). Swedish Match has not even tried to show that the pro rata cost of its compliance exceeds $75,000.[1] So it has not plausibly alleged that the Court has subject-matter jurisdiction under 28 U.S.C. § 1332. *See Now Health Grp., Inc.*, 2021 WL 2809106, at *4.

Undeterred, Swedish Match argues that this case falls into a "long-recognized exception to the non-aggregation doctrine for common and undivided claims." ECF No. 24 at 17. That exception applies "when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest." *Troy Bank of Troy, Ind., v. G.A. Whitehead & Co.*, 222 U.S. 39, 40–41 (1911). "But whatever its applicability in other contexts, no court in this District has ever applied that exception to permit circumvention of the non-aggregation principle in a case brought by a single plaintiff involving the type of claims and relief at issue here." *Beyond Pesticides v. Exxon Mobil Corp.*, No. 20-cv-1815, 2021 WL 1092167, at *2 (D.D.C. Mar. 22, 2021). The exception applies only when "individual members of the [represented] class could not as a matter of law bring suit other than in a representative capacity." *Food & Water Watch, Inc. v. Tyson Foods, Inc.*, No. 19-cv-2811, 2020 WL 1065553, at *4 (D.D.C. Mar. 5, 2020) (quoting *Nat'l Org. for Women v. Mut. of Omaha Ins. Co.*, 612 F. Supp. 100, 106 (D.D.C. 1985)). So the "key question" is whether Breathe DC and "the members of the general public" it seeks to represent "have separate and distinct claims that could be brought *independently* against Defendant[s] with respect to the

---

[1] Though Swedish Match argues this approach violates the D.C. Circuit's opinion in *Committee for GI Rights v. Callaway*, 518 F.2d 466 (D.C. Cir. 1975), other courts in this District have persuasively rejected this argument. *See, e.g.*, *Earth Island Inst. v. BlueTriton Brands*, 583 F. Supp. 3d 105, 110–11 (D.D.C. 2022); *Earth Island Inst. v. Coca-Cola Co.*, No. 21-cv-1926, 2022 WL 872605, at *4 (D.D.C. Mar. 24, 2022).

challenged conduct." *Id.* (emphasis added) (quoting *Animal Legal Def. Fund*, 249 F. Supp. 3d at 61–62). Breathe DC and the "consumers on whose behalf [it] bring[s] suit have separate and distinct claims" because "*any* individual" exposed to Defendants' allegedly deceptive practices "could bring a CPPA suit on the same grounds advanced by" Breathe DC. *Id.* (emphasis added). So "this is not a case where no member of the 'general public' could enforce the right at issue in the absence of the others," and so the exception for "common and undivided claims" does not apply. *Santa Fe Nat. Tobacco Co.*, 232 F. Supp. 3d at 171.[2]

Similarly, Swedish Match argues that aggregation is warranted because Defendants will incur the same cost no matter how many people benefit from the requested injunction. ECF No. 24 at 24–25. But another court in this District has already convincingly rejected this argument. In *Animal Legal Defense Fund*, Judge Kollar-Kotelly explained that "[t]he key question courts consider with respect to aggregation is not whether an injunction would cost Defendant more or less depending on the number of beneficiaries, but instead whether Plaintiff and the members of the general public have separate and distinct claims." 249 F. Supp. 3d at 61. As just explained, that is so here. Thus, the non-aggregation principle still applies.

Breathe DC's request for attorneys' and expert fees also does not establish the Court's jurisdiction. True, such requests may, in some cases, push the amount in controversy over $75,000. *See Breakman*, 545 F. Supp. 2d at 106–08. But in CPPA cases like this one, courts in this District have also applied the non-aggregation principle to attorneys' fees. *E.g.*, *id.* at 107; *Nat'l Consumers League v. Gen. Mills, Inc.*, 680 F. Supp. 2d 132, 141 (D.D.C. 2010). And as with its cost-of-

---

[2] Swedish Match argues that these cases are inapt because Breathe DC "*expressly disavows* any intent to represent a class." ECF No. 24 at 24. But the logic of these cases is not limited to formal class actions. And while Breathe DC does not seek to bring a class action, it still alleges that it sues on behalf of "the general public"—that is, a group of "D.C. consumers generally"—in a representative capacity under the CPPA. ECF No. 1-1 ¶ 37.

compliance estimate, Swedish Match does not try to calculate Breathe DC's requested fees on a pro rata basis.

As a final effort to establish the amount-in-controversy required for diversity jurisdiction, Swedish Match argues that even if the non-aggregation principle is appropriate in other CPPA cases, it is inappropriate here because Breathe DC "seeks . . . to enforce a different statute—D.C.'s statutory ban on flavored tobacco products—and that claim cannot be considered an aggregated claim at all." ECF No. 24 at 26. Not so. Breathe DC brings one cause of action against Defendants under the CPPA for allegedly false and deceptive trade practices. ECF No. 1-1 ¶¶ 112–120. The allegations in support of that cause of action do not somehow recast Breathe DC's lawsuit as one to enforce a separate statute that bans the sale of flavored tobacco products in the District. Breathe DC's claim is brought under the CPPA and is subject to the non-aggregation principle.

For these reasons, Swedish Match has not shown that the amount-in-controversy requirement is satisfied such that the Court may exercise diversity jurisdiction.

**B.     Federal-Enclave Jurisdiction**

The Enclave Clause of the Constitution authorizes Congress "[t]o exercise exclusive Legislation in all Cases whatsoever . . . over all Places purchased . . . for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings." U.S. Const. art. I, § 8, cl. 17. Of course, it does not itself vest district courts with any form of jurisdiction. But courts have interpreted it to mean that "federal law applies to a legal controversy arising on federal enclaves," so "a court has jurisdiction over such a claim under [28 U.S.C.] § 1331," the federal-question-jurisdiction statute. *County of San Mateo v. Chevron Corp.*, 32 F.4th 733, 749 (9th Cir. 2022). That is so even when state, local, or municipal law supplies the substantive rule of decision. *Jograj v. Enter. Servs., LLC*, 270 F. Supp. 3d 10, 16 (D.D.C. 2017).

Federal-enclave jurisdiction also "requires 'that *all* pertinent events take place on a federal

enclave.'" *District of Columbia v. Exxon Mobil Corp.*, 640 F. Supp. 3d 95, 107 (D.D.C. 2022), *aff'd*, 89 F.4th 144 (D.C. Cir. 2023) (quoting *Bd. of Cnty. Comm'rs v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1271 (10th Cir. 2022)). This is where Swedish Match stumbles. No doubt, some parts of the District of Columbia, such as military bases, are federal enclaves. But there is no support for the notion—and Swedish Match does not argue—that the *entire* District is such an enclave. *Id.* at 106 n.6. So for the Court to have federal-enclave jurisdiction, Swedish Match must show that Defendants' alleged deceptive practices were limited to those portions of the District properly characterized as federal enclaves.

But Breathe DC's complaint does nothing of the sort. The complaint alleges that Defendants' false advertising affected consumers across the District of Columbia. ECF No. 1-1 ¶¶ 23–24, 29. And Swedish Match does not argue that anything material to Breathe DC's claim happened in a federal enclave that did not occur elsewhere. Thus, Swedish Match's claim that a "material amount of ZYN sales in the District occur on military establishments" is insufficient to invoke federal-enclave jurisdiction. ECF No. 1 ¶ 24. In other words, it is not enough that "*some* of the pertinent activity occurred on a federal enclave." *Exxon Mobil*, 640 F. Supp. 3d 95, at 106 (emphasis added).

For these reasons, Swedish Match has not shown that it is appropriate for the Court to exercise federal-enclave jurisdiction.

C. **Article III Standing**

Article III of the Constitution limits a federal court's jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. Implicit within that limitation is the requirement that plaintiffs have standing to bring their claims in federal court. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341–42 (2006). And plaintiffs have standing when they have "suffer[ed] an 'injury in fact' that is both 'concrete and particularized' and either 'actual or imminent'" that was caused by

8

a defendant's actions and is redressable by a favorable court ruling. *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Standing is party specific: a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Even if the Court found that it had jurisdiction under either § 1331 or § 1332, it would still have to remand this case, because Swedish Match has not shown that Breathe DC has suffered an injury-in-fact sufficient to confer Article III standing. Breathe DC itself does not purport to allege in its complaint that it suffered an Article III injury caused by Defendants. ECF No. 15-1 at 20–23. But it did not have to do so to file in Superior Court—rather, it relied on the statutory standing provided for in the CPPA that does not require such an injury. D.C. Code § 28-3905(k)(1)(D)(i) ("[A] public interest organization may, on behalf of the interests of a consumer or a class of consumers, bring an action seeking relief."); *see Animal Legal Def. Fund v. Hormel*, 258 A.3d 174, (D.C. 2021) (finding that provision (k)(1)(D) of D.C. Code § 28-3905 "modif[ies] Article III's doctrinal requirements with a more expansive statutory test"). Still, to remove this case, Swedish Match must show that the case "could originally have been brought in federal court," *Flowers Bakeries, LLC*, 36 F. Supp. 3d at 30 (citing 28 U.S.C. § 1441(a)), which in this context involves showing that Breathe DC *did* suffer an Article III injury.

Swedish Match argues that Breathe DC has standing for two reasons. First, it claims that Breathe DC has alleged that it suffered an Article III injury such that it has organizational standing. ECF No. 24 at 33. Second, it argues that "Breathe DC's attempt to enforce the D.C. flavor ban statute must be interpreted as an attempt to vindicate a government interest, which is sufficient to create Article III jurisdiction." *Id.* at 33–34. Neither argument holds water.

9

For Breathe DC to have organizational standing, Defendants' conduct must have caused "a concrete and demonstrable injury to [Breathe DC]'s activities that is more than simply a setback to [its] abstract social interests." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 378 (D.C. Cir. 2017) (quotation and internal quotation marks omitted). That requires Breathe DC to have alleged two things: (1) Defendants' actions "injured" its "interest[s]," and (2) it "used its resources to counteract that harm." *Id.* (quoting *People for the Ethical Treatment of Animals v. USDA*, 797 F.3d 1087, 1094 (D.C. Cir. 2015)).

Swedish Match argues that Breathe DC's complaint plausibly alleges an Article III injury-in-fact because one of its "activities is to 'help[] District residents addicted to tobacco and nicotine products quit through counseling cessation and education services.'" ECF No. 24 at 34 (alteration in original) (quoting ECF No. 1-1 ¶ 18). And since Defendants' alleged conduct makes it easier for District residents, especially minors, to become addicted to these products, Swedish Match contends that "the allegations, if true, would raise a plausible inference that the alleged conduct increases Breathe DC's costs to implement" its services and programs. ECF No. 24 at 35.

The problem for Swedish Match is that any link between Defendants' alleged false and deceptive advertising and how Breathe DC has deployed its resources is far too speculative to make out an injury that would confer Article III standing. "Unlike other cases where organizational standing has been found, [Breathe DC] does not claim that it suffered harm to its operations or ability to provide services as a result of [Defendants'] actions, such as by 'increas[ing] the resources the group must devote to programs independent of its suit challenging the action.'" *Clean Label Project Found., v. Garden of Life, LLC*, No. 20-cv-3229, 2021 WL 4318099, at *4 (D.D.C. Sept. 23, 2021) (quoting *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27–29 (D.C. Cir. 1990)). The same is true for Defendants' argument that "Breathe DC's interest in more stringent laws and

regulations . . . require[s] it to commit additional resources to respond to [Defendants' alleged] circumvention" of existing laws. ECF No. 24 at 35.

Swedish Match's second argument is even easier to dispense with. As discussed above, Breathe DC brings a claim against Defendants under the CPPA; it is not attempting to enforce the District's ban on the sale of flavored tobacco products in the District. And Swedish Match cites no authority for the idea that under these circumstances, the Court can treat Breathe DC like a *qui tam* relator, even if such relators need not allege standing when suing under a *qui tam* statute—at least so long as the government entity on whose behalf they are suing would have standing. *See, e.g.*, *United States ex rel. El Amin v. George Washington Univ.*, 26 F. Supp. 2d 162, 166 (D.D.C. 1998). Simply put, "the CPPA is not a *qui tam* statute." *Nat'l Ass'n of Consumer Advocs. v. RentGrow, Inc.*, No. 24-cv-3218, 2025 WL 1429172, at *2 n.2 (D.D.C. May 16, 2025).

For these reasons, Swedish Match has not shown that Breathe DC suffered an Article III injury that would confer standing to bring this action in federal court.

### D.    Fees and Costs

Because the Court agrees that remand is appropriate, it must next address Breathe DC's motion for costs and expenses associated with its successful motion for remand. ECF No. 16. "A court may award such fees if the removing party lacks 'an objectively reasonable basis for seeking removal.'" *Santa Fe Nat. Tobacco Co.*, 232 F. Supp. 3d at 172 (quoting *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005)). As several courts have concluded, however, Defendants' removal of a CPPA action like this, though contrary to uniform District precedent, does not meet this standard. *See, e.g.*, *Beyond Pesticides*, 2021 WL 1092167, at *3; *JUUL Labs, Inc.*, 2023 WL 4531767, at *5; *Gen. Mills, Inc.*, 680 F. Supp. 2d at 141. Defendants' "arguments regarding removability are not objectively unreasonable because there is 'no clear, controlling case law from the D.C. Circuit.'" *Toxin Free USA*, 507 F. Supp. 3d at 47 (quoting *Breakman*, 545 F. Supp. 2d at

11

108); *Gen. Mills, Inc.*, 680 F. Supp. 2d at 141.  And Breathe DC has not identified any "unusual circumstances" justifying departing from this baseline rule.  *See Martin*, 546 U.S. at 141.  Thus, the Court will decline to order fees and costs.

### IV.     Conclusion

For all the above reasons, the Court will grant Breathe DC's Motion to Remand and deny its Motion for Costs and Expenses.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 28, 2025